## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TELEPATHY, INC.
P.O. Box 11077
Washington, D.C. 20008,

      Plaintiff,

v.

PARAMETRIC PORTFOLIO
ASSOCIATES, LLC
1918 Eighth Avenue
Suite 3100
Seattle, WA 98101,

      Defendant.

Case No. 16-cv-2210

## VERIFIED COMPLAINT

Plaintiff, Telepathy, Inc., for its Verified Complaint against defendant Parametric

Portfolio Associates, LLC alleges:

## NATURE OF THE SUIT

1.    This action arises from a growing and unfortunate trend of companies seeking to

acquire domain names wrongfully by asserting spurious cybersquatting claims as a "plan b"

when their purchase negotiations do not lead to a price they are willing to accept.

2.    Plaintiff Telepathy, Inc. ("Telepathy" or "Plaintiff") seeks actual, statutory and/or

punitive damages, attorney's fees and costs, a declaration of the parties' rights, a finding of

Telepathy's lack of bad faith intent under the Anticybersquatting Consumer Protection Act, a

finding that Defendant engaged in reverse domain name hijacking under the Anticybersquatting

Consumer Protection Act, and a finding that Defendant engaged in fraud, negligent

misrepresentation, and breach of contract.

## PARTIES

3.      Telepathy is a corporation organized and existing under the laws of Washington, D.C. with a principal business address of P.O. Box 11077, Washington, D.C. 20008.

4.      On information and belief, Parametric Portfolio Associates, LLC ("Defendant") is a limited liability company organized and existing under the laws of Delaware with a principal business address of 1918 Eighth Avenue, Suite 3100, Seattle, WA 98101.

## JURISDICTION AND VENUE

5.      This is a civil action arising under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); the doctrines of ancillary and pendent jurisdiction; and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) in that there is complete diversity of citizenship between Telepathy and the Defendant and the amount in controversy exceeds $75,000.00.

6.      Defendant entered into a contract providing a representation regarding Telepathy's domain name that "neither I, nor my organization, claims a legal right to the registration of the domain name."  Defendant's actions, including breach of the aforementioned representation and warranty, caused injury to Telepathy within this District.  Defendant has purposely directed its activities at this District, including entering into a contract with a DC based entity, such actions were intentional, expressly aimed at the District, and have caused harm to Telepathy in this District which Defendant knew or should have known would be suffered in this District.

7.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the injury to Telepathy giving rise to the claims in this action occurred in this District.

2

## FACTUAL BACKGROUND

### *Plaintiff and its Business*

8.      Telepathy is a DC-based e-commerce corporation that has been in business for more than 17 years.

9.      Telepathy often registers or acquires domain names, including apparently generic terms, common words, initialisms, acronyms, and short phrases, and uses the domain names to provide information to consumers on the Internet concerning the generic or plain-meaning connotation of the terms.  Where the terms have no generic or plain meaning, the domain names are typically used to provide an Internet search function or general information.   Telepathy owns over 5,000 such domain names.

10.      Parametric is a generic and/or common English word meaning "of or relating to, or expressed in terms of a parameter or parameters."  The word is commonly used in the field of statistics to denote the assumption of "the value of a parameter for the purpose of analysis" and in the field of electronics to relate to or denote "a process in which amplification or frequency conversion is obtained using a device modulated by a pumping frequency, which enables power to be transferred from the pumping frequency to the signal."

11.      Telepathy acquired the parametric.com domain name in November of 1998.

12.      Telepathy acquired the parametric.com domain name due to the inherent value of generic and/or common .com domain names.

13.      Telepathy was not aware of Defendant or its claimed common law trademark rights when Telepathy registered the parametric.com domain name in 1998.

14.      The parametric.com domain name is not configured to display a website that suggests that the site is operated by or affiliated with Defendant.

15.      The parametric.com domain name is not configured to display a website with

3

products or services related to "financial portfolio management" such as those services provided by Defendant.

16.     Telepathy did not have at the time of registration, and does not now have, an intent to divert consumers from Defendant's online location to a website that could harm Defendant's goodwill represented by Defendant's trademark.

17.     At no time did Telepathy approach Defendant seeking to sell the parametric.com domain name to Defendant.

18.     Telepathy owns no other domain names containing "parametric."

19.     Since the date of Telepathy's acquisition of the parametric.com domain name in November of 1998, the parametric.com domain name registration has at all times reflected accurate contact information identifying Telepathy as the owner of the domain name.

20.     Defendant is not the exclusive owner of the generic and/or common English word "parametric" throughout the world, nor is "parametric" exclusively associated with Defendant.

21.     A Google search for "parametric" produces over 22 million results.

22.     On information and belief, at least four entities apparently unrelated to Defendant have registered to conduct business in the District of Columbia using the generic and/or common word "Parametric" including Parametric Inc., Parametric Development Corporation, Parametric Construction Company, and Parametric Consultants Inc.

23.     On information and belief, in addition to Defendant, at least 24 entities have formed under Delaware law using the generic and/or common word "Parametric" including Parametric, LLC, Parametric Design LLC, Parametric Dining LLC, Parametric Holdings Inc., Parametric International, Inc., and Parametric Technology International, Inc.

24.     Defendant's PARAMETRIC trademark is not famous within the meaning of the

Lanham Act and is not highly distinctive given that the trademark is comprised of merely a generic and/or common English word that is frequently used by third-parties around the world.

25.     Telepathy had, and continues to have, reasonable grounds to believe that the registration and use of the parametric.com domain name was a fair use or otherwise lawful.

26.     Telepathy neither registered nor used the parametric.com domain name with bad faith intent to profit from the Defendant's trademark.

### ***Background on the Anticybersquatting Consumer Protection Act***

27.     The Anticybersquatting Consumer Protection Act (the "ACPA") was passed into law in 1999 to address the serious problem of cybersquatting, which is the registration, trafficking in, or use of a domain name with a bad faith intent to profit from a trademark that is identical or confusingly similar to the domain name.

28.     Around the same time period, the Internet Corporation for Assigned Names and Numbers ("ICANN") promulgated the UDRP to provide an administrative remedy, dictated by contract, to also address cybersquatting.

29.     The ACPA was developed to address "'cybersquatters' or 'cyberpirates,' who abuse the rights of trademark holders by purposely and maliciously registering as a domain name the trademark name of another company to divert and confuse customers" (106 Cong. Rec., S10517).

30.     Similarly, the UDRP was developed to address the "deliberate, bad faith registration as domain names of well-known and other trademarks" (WIPO Final Report, Par. 23 (1999)).

31.     The ACPA and the UDRP include a requirement of bad faith.

"Good faith, innocent or negligent uses of a domain name that is identical or confusingly similar to another's mark or dilutive of a famous mark **are not**

**covered by the legislation's prohibition**.  Thus, registering a domain name while unaware that the name is another's trademark would not be actionable."
106 Cong. Rec., S10518.

32.     When drafting the ACPA, Congress was concerned that overreaching cybersquatting claims could be asserted to take a domain name from a registrant that did not possess the bad faith specifically required under the ACPA and administrative policies such as the UDRP.   The Congressional Record for the ACPA is replete with specific examples of overreaching cybersquatting claims such as claims asserted against "two year old Veronica Sam's 'Little Veronica' website and 12 year old Chris 'Pokey' Van Allen's web page."  106 Cong. Rec., S9755.

33.     In light of the potential for such overreaching claims, Congress provided domain name owners with causes of action to determine that they have not violated the ACPA, and to award damages, attorney's fees, and injunctive relief in cases of reverse domain name hijacking.

34.     Similar to the ACPA, the UDRP also provides for findings of reverse domain name hijacking where "the complaint was brought in bad faith and constitutes an abuse of the administrative proceeding."  As an administrative proceeding, the UDRP does not provide a means for an injured domain name owner such as Telepathy to be made whole, which has forced Telepathy to pursue the present action under the ACPA.

35.     Defendant's actions in the present case are precisely the type of overreaching actions that Congress cited as the reason for creation of the causes of action now asserted by Telepathy.  Indeed, Defendant and its counsel's course of conduct in pursuit of Defendant's baseless claims is far more troubling than the examples cited by Congress when creating the present causes of action.  Defendant has no more right to steal Telepathy's parametric.com domain name than the claimants' had to steal the Veronica.org domain name from little Veronica

Sams or the Pokey.org domain name from little Chris "Pokey" Van Allen.

### *Background on Defendant*
### *and Defendant's Reverse Domain Name Hijacking*

36.     Defendant claims to be a leading global asset management firm focused on the delivery of engineered portfolio solutions.

37.     Defendant's services are currently offered throughout the United States including, on information and belief, in this District.

38.     Defendant has offices in Seattle, Washington, Minneapolis, Minnesota, Westport, Connecticut, and Sydney, Australia.

39.     Defendant is a wholly-owned subsidiary of Eaton Vance Corp., a publicly traded company that claims to be a leading global asset manager with offices in North America, Europe, Asia, and Australia.

40.     Defendant apparently did not develop an interest in the parametric.com domain name until more than fifteen years after Telepathy acquired the domain name.

41.     On February 28, 2014, Defendant used the SecuredOffers.com service to make an offer to purchase the parametric.com domain name from Telepathy for $1,000.

42.     Defendant used the SecuredOffers.com service to enter into a contract by providing contact information, payment of $19.00, and affirmatively selecting two boxes agreeing to be bound by the SecuredOffers.com Terms of Service and the following representation and warranty:  "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

43.     Telepathy was an intended beneficiary of the representation and warranty as shown by, *inter alia,* the fact that the representation and warranty language referred to Telepathy's parametric.com domain name for which Defendant was paying to make a purchase

offer.

44.    Telepathy required Defendant to enter into the aforementioned contract before engaging in further negotiations with Defendant as a risk mitigation policy adopted by Telepathy due to numerous prior instances of a prospective buyer using the substance of a purchase negotiation in furtherance of a baseless claim of cybersquatting.

45.    In exchange for the representation and warranty, and payment, Defendant was afforded the opportunity to make an offer to purchase the parametric.com domain name from Telepathy and, in reliance on the representation and warranty, Telepathy responded to the February 28, 2014 purchase solicitation with a standard email explaining the value of generic and/or common .com domain names.

46.    Upon information and belief, Defendant knowingly and willfully misrepresented its claim to Telepathy's parametric.com domain name for the purpose of inducing Telepathy to make a sales offer for the domain name that Defendant intended to use to support its baseless cybersquatting claim against Telepathy.

47.    Defendant's misrepresentation and breach of the contract became apparent when, on October 6, 2016, Defendant filed a complaint under the UDRP with the World Intellectual Property Organization alleging *inter alia* that Telepathy registered and used the parametric.com domain name in bad faith and that Telepathy possesses no rights or legitimate interests in the domain name.

48.    Upon information and belief, Defendant provided the UDRP complaint to the domain name registrar used by Telepathy for the parametric.com domain name, Name.com, Inc., concurrently with the filing of the complaint by Defendant with the World Intellectual Property Organization as required by the UDRP rules.

49.     In response to Defendant's claims in the UDRP complaint, Name.com, Inc. changed the "status code" for the domain name, thereby disabling and/or suspending the parametric.com domain name and limiting Telepathy's lawful use of the domain name.

50.     Name.com's disabling and/or suspending of the parametric.com domain name in response to Defendant's claims has prevented Telepathy from using its account with Name.com to change the hosting settings for the domain name, the registrant for the domain name, and the administrative and technical contacts for the domain name, and from transferring ownership of the domain name.

51.     Upon information and belief, Name.com's disabling and/or suspending of the parametric.com domain name was pursuant to Name.com's implementation of a reasonable policy prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark, and such action was taken by Name.com in response to Defendant's knowing and material misrepresentation that the parametric.com domain name is identical to, confusingly similar to, or dilutive of, Defendant's trademark.

52.     Defendant's UDRP complaint contained the following certification: "Complainant certifies that the information contained in this Complaint is to the best of Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument."

53.     Contrary to Defendant's certification in the UDRP complaint, Defendant's complaint contained material omissions and misstatements of fact and law.

54.     Defendant's UDRP complaint alleges that Telepathy's "bad faith" registration of

the parametric.com domain name is shown by Defendant having "been in business, using 'Parametric' as its trademark, for over a decade when [Telepathy] registered" the parametric.com domain name.

55.     Defendant's foregoing allegation is incorrect; on information and belief, when Telepathy registered the parametric.com domain name in 1998, Defendant had a single office in Seattle, Washington with fewer than ten employees, providing an apparently very limited service offering to a niche audience, which would not have been sufficient to establish federal common law trademark rights.

56.     Defendant's UDRP complaint alleges that Telepathy's parametric.com domain name "is essentially identical to [Defendant's] Trademark" of U.S. Registration No. 4624609.

57.     Defendant's foregoing allegation is incorrect; Defendant's U.S. Registration No. 4624609 is directed to a design mark, which Defendant did not disclose in its UDRP complaint.

58.      Defendant's UDRP complaint alleges that Telepathy's lack of rights or legitimate interests in the parametric.com domain name is shown because Telepathy "approached [Defendant] with an offer to sell the Domain Name for $225,000."

59.     Defendant's UDRP complaint alleges that Telepathy's "bad faith" registration and use of the parametric.com domain name is shown by Telepathy having "approached [Defendant] with an offer to sell the Domain Name for $225,000" on February 28, 2014.

60.     Defendant's foregoing allegations are incorrect; Defendant approached Telepathy to purchase the domain name and Telepathy merely responded to Defendant's offer.

61.     Defendant's UDRP complaint contains the material omission of any reference to Defendant's prior representation and warranty that Defendant claimed no legal rights in the parametric.com domain name.

62.     Although the UDRP requires establishment of both bad faith registration and bad faith use of the domain name, Defendant's UDRP complaint materially omits that Telepathy is not using the parametric.com domain name to display content related in any way to Defendant or its products.

## COUNT I
## DECLARATORY JUDGMENT
### (28 U.S.C. § 2201 and 2202)

63.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

64.     Defendant has asserted that Telepathy registered and used the parametric.com domain name in bad faith and without any rights or legitimate interests in the domain name.

65.     Defendant has asserted that Telepathy's ownership of the parametric.com domain name is likely to cause confusion among Defendant's consumers and the consuming public.

66.     The parametric.com domain name was not registered and used by Telepathy in bad faith, Telepathy possesses rights and legitimate interests in the domain name, and Telepathy is entitled to a declaration that it did not violate the Anticybersquatting Consumer Protection Act.

67.     Defendant's claims against Telepathy constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act.

68.     An actual and justiciable controversy exists between Defendant and Telepathy and Telepathy is entitled to a declaratory judgment that Defendant has violated the Anticybersquatting Consumer Protection Act, that Telepathy has not violated the Anticybersquatting Consumer Protection Act, and that any claim that Telepathy violated the Anticybersquatting Consumer Protection Act is barred by the statute of limitations.

69.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby

entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT II
## NO BAD FAITH INTENT/CYBERPIRACY
## (15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1)(B)(ii))

70.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

71.     The actions described above evidence the absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy as owner of the parametric.com domain name registration.

72.     The actions described above evidence a belief by Telepathy that the registration and use of the parametric.com domain name was a fair use or otherwise lawful.

73.     The actions described above evidence reasonable grounds for belief by Telepathy that the registration and use of the parametric.com domain name was a fair use or otherwise lawful.

74.     Telepathy is entitled to a judgment of no bad faith intent in the registration or use of the parametric.com domain name.

75.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT III
## REVERSE DOMAIN NAME HIJACKING
## (15 U.S.C. § 1114(2)(D)(iv))

76.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

77.     A cursory review of the UDRP and/or ACPA, and a basic investigation of parametric.com, should have made it clear to Defendant that Telepathy's registration and use of

parametric.com is entirely proper and lawful.

78.     Defendant's UDRP filing represents a knowing and material misrepresentation that the parametric.com domain name is a bad faith use of the Defendant's trademark.

79.     Defendant's UDRP filing and the allegations of cybersquatting set forth therein represent a knowing and material misrepresentation that the parametric.com domain name is identical to, confusingly similar to, or dilutive of a mark.

80.     Defendant's UDRP filing and communications to Telepathy's domain name registrar caused the registrar to disable and/or suspend the parametric.com domain name thereby limiting Telepathy's lawful use of the domain name.

81.     The above acts by Defendant constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(iv).

82.     The foregoing actions of Defendant have been knowing, deliberate, and willful.

83.     Telepathy is entitled to a judgment that Defendant's actions violate the Anticybersquatting Consumer Protection Act.

84.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

**COUNT IV**
**BREACH OF CONTRACT**

85.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

86.     Defendant entered into a contract through the SecuredOffers.com service and the circumstances surrounding the formation of the contract identify Telepathy as a beneficiary of the contract.

87.     Telepathy directed Defendant to the SecuredOffers.com service, and the terms of

the contract that Defendant entered into further demonstrate that Telepathy is the intended beneficiary of the terms of the contract.

88.     Defendant breached the terms of its contract by pursuing a baseless legal claim violating the representation and warranty to Telepathy that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

89.     Telepathy is entitled to a judgment that Defendant's actions constitute breach of contract.

90.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover damages.

**COUNT V**
**FRAUD**

91.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

92.     Defendant made a false representation when asserting that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

93.     Defendant's false representation was to a material fact in that Telepathy would not have engaged in any dealings with Defendant had Defendant truthfully represented its baseless cybersquatting claim regarding the parametric.com domain name.

94.     Defendant made the false representation with knowledge of its falsity given that Defendant thereafter asserted its baseless cybersquatting claim in contradiction to the representation.

95.     Defendant made the false representation with intent to deceive Telepathy and,

14

relying on the false representation, Telepathy engaged in further discussions with Defendant which Defendant then attempted to use to support its baseless cybersquatting claim.

96.     The foregoing actions of Defendant have been knowing, deliberate, and willful.

97.     Telepathy is entitled to a judgment that Defendant's actions constitute fraud.

98.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or punitive damages and attorney's fees and costs.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

99.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

100.    Defendant made a false representation when asserting that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

101.    Defendant's false representation was to a material fact in that Telepathy would not have engaged in any dealings with Defendant had Defendant truthfully represented its baseless cybersquatting claim regarding the parametric.com domain name.

102.    Defendant's false representation was in violation of Defendant's duty to excise reasonable care before making such a false, material misrepresentation.

103.    Telepathy relied to its detriment on Defendant's false representation and engaged in further discussions with Defendant.

104.    Defendant's false representation was a cause of injury to Telepathy in that Defendant used the false representation to obtain a sale offer from Telepathy for the parametric.com domain name, which Defendant then attempted to use to support its baseless cybersquatting claim.

105.    Telepathy is entitled to a judgment that Defendant's actions constitute negligent misrepresentation.

106.    Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or punitive damages and attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Telepathy respectfully requests that the Court:

1.    Enter judgment on its behalf against Defendant on all counts;

2.    Enter an order finding an absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy;

3.    Enter an order finding that Defendant made a knowing and material misrepresentation that the parametric.com domain name is a bad faith use of Defendant's trademark;

4.    Enter an order finding that Defendant made a knowing and material misrepresentation that the parametric.com domain name is identical to, confusingly similar to, or dilutive of a mark;

5.    Enter an order finding the Defendant engaged in reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act;

6.    Enter an order enjoining Defendant from any and all further efforts to force Telepathy to transfer the parametric.com domain name to Defendant;

7.    Enter an order finding that Defendant engaged in breach of contract;

8.    Enter an order finding that Defendant engaged in fraud;

9.    Enter an order finding that Defendant engaged in negligent misrepresentation;

10.    Enter an order directing Name.com to lift the disabling and/or suspension of

Telepathy's parametric.com domain name;

11.     Enter an award of $100,000.00 in statutory and/or punitive damages against

Defendant pursuant to 15 U.S.C. § 1117(d) and/or for Defendant's fraud and/or negligent

misrepresentation;

12.     Enter an award of Telepathy's damages, costs and reasonable attorneys' fees

pursuant to 15 U.S.C. § 1114(2)(D)(iv);

13.     Enter an order finding the case to be exceptional and awarding Telepathy its

reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a); and

14.     Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

jury trial on issues triable by a jury.


Dated: November 4, 2016          By:     _____/s/_____
                                          Brian H. Pandya (DC Bar No.  501661)
                                          David E. Weslow (DC Bar No. 480713)
                                          WILEY REIN LLP
                                          1776 K St. NW
                                          Washington, DC 20006
                                          (202) 719-7000 (phone)
                                          bpandya@wileyrein.com
                                          dweslow@wileyrein.com

                                          *Counsel for Telepathy, Inc.*

## VERIFICATION

I, Nat Cohen, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the President of Telepathy, Inc. and the facts contained in the foregoing Verified Complaint are true and correct.

*Nat Cohen*
Nat Cohen, President

*November 3, 2016*
Date